Good morning. May it please the court? Your Honor, my name is Rick Temple. I'm from Springfield. I'm here representing the appellant, PSC Customs, doing business as Polar Tank Trailer. Again, this is a review of an arbitration award. You can anticipate my first question is, how do you distinguish this from Boerwinger? Well, Your Honor, I wanted to also tell you that the RACO granting case, which you just granted re-hearing on, is my case also. So I've been watching closely what's happening with the arbitration decisions in this case. And I've looked at your recent case, Boerwinger, also the OutKan case. Which you argued. Pardon? You argued. No, that was not my case. Oh, okay. I had another one on the same day, Your Honor, that's still not yet been issued. But it was argued the same day as the Boerwinger case, and my opposing counsel was the same in that case. But yes, I've been watching closely, and given that the court granted re-hearing in Bonk in my RACO granting case. I forgot I had two of them that week. Exactly. I knew you were on one. Exactly, Your Honor. I think this case can be distinguished from the Boerwinger case on two grounds. First, in that case, the primary issue ruled, because the case we have now in front of this court is not a public policy case. It's simply a case of, which I think is controlled by Northern Power, the case that's a 213 case that came down two days, I think. That's the first half of Boerwinger, not the public policy one. Correct. But as for the first half of it, the primary argument in Boerwinger, Your Honor, that you ruled was that their argument had been waived, that they had not asserted that it violated a certain unambiguous contract phase, contract clause of the contract. And so therefore, there's waiver. We do not have that argument here. The second one, Your Honor, is in the Boerwinger case, in that first part, you mentioned that they were not referring to a specific collective bargaining agreement clause. Rather, they were referring to an extraneous set of rules. In this case, we are referencing a specific collective bargaining agreement clause that says insubordination shall result in discharge. In addition, we have a specific contract clause that says the company shall be able to institute rules, and that discipline can be applied for those rules. And the rules were in existence at the time that we negotiated the collective bargaining agreement that this is now under. I don't think that anywhere that the union asserted that the rules of conduct or the standards of conduct were not in place. Well, those are the distinctions that occurred in trying to compare the cases, and then which led to the question, why is the collective bargaining agreement provision sort of ratifying, if you will, preexisting rules of insubordination, require the arbitrator to accept, without further inquiry, the PSC's decision as to what constitutes insubordination warranting discharge? Well, in this case, Your Honor, if you... That seems to me is where you... The heart of the case. The road hits the road. What is insubordination? And here's the issue in this case that I believe is so important. I laid awake last night thinking, how can I succinctly state this issue to draw it to a head? And in this case, as you know, for me in the case, we had a very serious safety issue that she left a gear, the agreement left a gear up on the rail that if it would have fallen, it would have killed somebody, and she put the rail back in operation. And she was told to check the other side, and she said, I checked the other side and it's fine, and she put it in operation when, in fact, the arbitrator found she did not check the other side. Her union coworkers testified against her at the hearing. They testified that they went up there and there's no way that she could have checked it as she said she did because when they put their screws into the bolt, there was still grease in there. The arbitrator didn't find that she misrepresented. The arbitrator said that the, as I read the award, he said the employer's witnesses, the other employee witnesses were credible, and therefore I accept the employer's version. It doesn't necessarily mean that he thought she had lied. Well, but here's, he did not specifically address that. He just found that the company's testimony was more credible than her testimony. But the actions of the company were taken because they believed that she was told to do something. She said she did it, and she did not do it, and this was the second time that very same thing had happened. She'd been told previously to check the crane. She said she checked it. She didn't check it. And her excuse the first time was, well, I must have overlooked it. She did the exact same thing again, and the company's belief was that she said she did it when she didn't, and the arbitrator found, and this is from the addendum to the appellant's brief at page 27, based upon the above, I find that the company has met its burden of showing that these events occurred in the manner which was claimed by the company. In other words, the company's claim was she was insubordinate. She lied to us. And once he found that we had met our burden of the events occurring in the manner in which we presented them and upon which we relied, it's our contention then that that is a de facto finding of insubordination. We just haven't taken it outside of MISCO. The arbitrator did not function outside of the contract. Well, 29.02 says the following acts constitute reason for action as outlined for each individual rule. Three, insubordination such as refusal to work on the job assigned, etc. That implies that not everything that an employer would consider insubordinate rises to the level of a mandatory discharge insubordination under that provision. Well, but, Your Honor, if he would have found that So the arbitrator has to apply that. That's what they do. Right. But if he would have found that she did check it, but she checked it a different way, or that she, you know, whatever, she checked it and she missed it, then we would have a different determination. But what we have here is he found that we proved that she was insubordinate upon which we relied. Well, I understand what the arbiter was doing. And, you know, I may disagree with what the arbiter's conclusion was, as apparently the district court may have disagreed too. I saw that. But as Judge Logan says, the arbiter is working within the confines of the agreement and goes to Article 21 and says, well, is this just cause? Yes, we have insubordination, and yes, she did all these things. But I don't find that it rises to the level of just cause. You know, I came here with a language that's maybe negligence. He looked at gross negligence and negligence. He determined it was negligence. Well, but he also defined insubordination to mean, I don't know, it's not defined, a willful and deliberate defiance. Now, I mean, what's your argument about the arbiter went wrong there, went outside the agreement or went beyond his authority? Sure. Your Honor, in your case, I looked for ways in which the three of you had defined it. And in your case back from 2003, the SCH-OCH-SOCH case that you wrote in 2003, you said an arbitrator's award can be vacated if it was completely irrational, meaning it fails to draw its essence from the agreement. In this case, my question is, how can you be directed by your employer to check a safety issue to make sure it's safe and you tell your employer that you did that and that it's safe and you put it in operation when, in fact, you did not do it, how can you say that that's not an intentional, deliberate act? That's my disagreement with the arbitrator. It's irrational. She said to management, I did it and it's safe. How do you get by the fact that it's not part of the essence of the contract? The arbiter, you know, in the abstract I may agree with you, but the test is whether the arbiter is not following the essence of the contract. And the arbiter is clearly using the language of the contract and making reasonable definitions of what insubordination is. But here's what I would assert, Your Honor, and I think it's the bigger issue that Judge Loken had mentioned about our RACO case and some others, we're seeing more and more arbitration cases before this court, obviously. And what we're finding is I do professional reading in this area. Not in the 1950s. Pardon? Not that in the 1950s. Correct. I mean, that stuff was secret. Correct. In my 27 years of practice, I'm seeing more now. But what I started to say is last week I did some professional reading and there were four cases listed and they were all discharge cases, and in every one the arbitrator found that the company did what they proved what they said the employee did, but they reduced the penalty. What's happening is arbitrators are selected by the parties. You get a panel in the labor field, and they want to be selected by both sides. So we're seeing more and more cases where they are finding that the company proved their underlying basis, but then they're finding a way to say, but I don't like that punishment, it's too strict. He obviously thought it was a serious event because he gave her a 30-day. But that's one of the problems with arbitration. Exactly. And there's nothing we can do about it. The Supreme Court in the Steelworkers Trilogy encouraged and expected and applauded. Sure. And you know there are judges, state and federal judges, that split the baby, too. Sure. And that's what these arbiters are doing is splitting the baby. Yes. We're seeing it over and over. And I'm just, my question to you is what authority or power do you think we have to do anything about it? And here's what I base it on, two cases. Two cases from this court that are pretty recent, and then a Sixth Circuit case only as persuasive authority, I understand. The key case that we're relying on is Northern States Power to April of 2013. Judge Locke and I noticed it says you did not participate in the consideration or decision of the rehearing in that matter. But in that case, the arbitrator found that the, he didn't use the word just cause, but he found that the employer had no option but to terminate the grievance. But he thought the punishment was too great. And in this case, with Judge Murphy dissenting, it was two to one, said the language of the arbitrator's decision, specifically that the company had demonstrated justification for its decision to terminate the employee, is sufficient to show that the arbitrator found the termination was supported by just cause. And once he made that determination, he could not look at the penalty phase, which is- But here he made the opposite determination, explicitly. Well- He did not find just cause to terminate. But he made a finding that the company met its burden of showing the reason that it terminated the employee, which was insubordination, Your Honor. That doesn't work. I mean, NSP, it's two to one. But the majority said explicitly in our, we conclude that the arbitrator made a finding of just cause. We cannot make that conclusion in this case. The arbitrator did not make that finding. This case is different than NSP. The second case is- In that regard, and it's a critical regard. If the arbitrator says there was just cause for termination, but I ain't going to terminate, that looks an awful lot like his own brand of industrial justice, to quote Justice William Douglas. That's exactly what we believe he did here. Yes, I know you do. But he was careful enough to make it clear that he stopped where he disagreed with the employer. But how- Was on a remedy, not on that there was misconduct worthy of discipline. Sure. But as Judge Raleigh said in his statement, irrational in the case, how could he find, we think it's a showing that it was result-oriented. How could he find that we met our burden of proving that she said she did something and she didn't do it, that that's not intentional or that's not insubordination. How can it be negligence to tell your boss I did this when you know you didn't do it? How can that be? Well, let me suggest to you, and I hate to argue the other side, but the arbiter heard the testimony. He heard her testimony, and as you and Judge Logan talked about, he didn't find her lying. He didn't find her not credible. He possibly found, maybe probably found, that she's just negligent. I don't mean to be critical of her, but maybe just said, well, she's kind of an airhead. She just doesn't do her job very well. She didn't intensely go out there and say, you know, I'm going to create a dangerous safety situation. It's just, eh, I didn't feel like doing it that day. Well, that's negligent. It's not intentional. You might argue it's gross negligence, but why is not that within the authority of the arbiter to say, I heard her testify. I think that she just was negligent. Your Honor, my response to that is it's not the negligence that she didn't do it. It's the intent that she told her employer she did to avoid discipline. That's what we assert is the difference in this case. I see my time has expired. Thank you. Okay, thank you. Good morning, Ms. Shapiro. May it please the Court. Sasha Shapiro for the Steelworkers. Your Honors, this is a case of an arbitrator who did his job. He listened to the evidence. He heard the party's arguments. He found facts. He interpreted the contract, and he applied the contract to those facts. If an arbitrator is even arguably interpreting the contract, as the Supreme Court has said repeatedly, this Court must enforce his award. Okay, you're going to need to slow down a little bit. I don't think that fast. Also, pull that mic closer to you. I apologize. We want to hear what you say and say it slow enough so it will sink in. Okay. The company here is twisting the arbitrator's words to come up with a finding that the award is directly contrary to the contract. There's a difference between finding that the events occurred the way the company claimed and a finding that the grievance was insubordinate, because insubordination is not merely conduct.  And the arbitrator here found specifically that the grievance actions were not willful or deliberate and that she was not aware of the consequences of her actions. What's your response to this? Well, two things. One, that this is so serious that she should be let go. And number two, that the arbitrator found all the facts that she essentially lied to her employer. She didn't use that word, but the facts are she didn't tell them the truth. And maybe we should say that the arbiter made all the factual findings for just cause, but then reached the wrong conclusion. My response to that is that that's a factual argument that the company had a right to make to the arbitrator, but the company can't retry the facts in court.  They're saying take the facts as they are, as found by the arbiter. The mistake was the arbiter saying, based on these facts, there's not just cause for termination. That is not what the arbitrator did here because the arbitrator made specific factual findings that her actions were not willful or deliberate. And this is similar to what the Supreme Court found in Misko, where the grievant was found in the front seat of a car, there was marijuana in the back seat, and the arbitrator found that was insufficient evidence that the grievant possessed marijuana. The Supreme Court said that may be silly or improvident fact-finding, but it's not grounds for overturning the award. Your Honors, do you have any more questions? I don't believe so. Is there any case that you know of that upholds the arbitrator's due process ruling, which struck me as totally contrary to litigation principles in employment discrimination cases, for example? I can't. I am not a... any reason for what we did other than accept what you put in the termination letter. That would be completely contrary to employment discrimination precedent in this Court and most every other. So where does he get... where's his due process clause coming from? He cited a labor and employment arbitration treatise. But he used a constitutional law term. He said it would be unconstitutional for me to consider any reason other than what was in the termination letter. It's a basic due process right that the grievant has a right to know what she was accused of doing. Why? She's been fired. She grieves it. Because... That's a preposterous notion of due process. And we do have the Alvey case where we said the arbitrator went outside the contract because he reached out to state law, misinterpreted it, and said the state law made me do this. And that strikes me as coming pretty close to what he did here. This is not state law that the arbitrator is referring to. It's established arbitral principles. Well, where? He didn't say... I mean, he said, well, this is like, I'm just doing what all the arbitrators do. Well, that's fine. Defend that. This is more... Give me a federal court of appeals if you said that's a legitimate arbitration... arbitrator's view of the procedural restrictions that apply. I'm sorry, I do not have a court case for that. Yeah, you wouldn't have. I mean, he was... He threw that out there. And if it made a difference, I wouldn't confirm. I mean, that is so preposterous that I would vote not to confirm if it made a difference.  This is similar to a criminal case where the defendant has a right to know the charges against her. It's not. I mean, in a typical collective bargaining arrangement, the employee is disciplined. The employee goes to the shop steward and says, I think that's unfair, and they agree. And they go in and both sides tell their story. But the employer doesn't have to tell the person, doesn't have to tell the employee what he or she did wrong before. It says you're suspended or whatever. That's just preposterous. Discharge is considered industrial capital punishment because it ends the grievant's employment. So arbitrators generally do import standards from criminal law. The grievant and the union can't... How do I know that's true? Arbitrators are given broad latitude. Yeah, but he says, I'm just doing what my fraternity does. And, you know, employment discrimination, the employer usually gives a reason for the discharge, and then it gives another, it expands on the reason when it's responding to the administrative equal employment agency, and then it gives an even more expansive reason when they come to court with a Title VII case. And no employment discrimination principle says you're stuck by, you may not rely on any reason other than what you put in the discharge letter. Now, we litigate over whether the changing reasons suggest some pretext or dishonesty, but this notion that he wouldn't listen to anything that wasn't in the discharge letter is just wrong. This is different from an employment discrimination situation because... They're both discharged. You called it capital punishment. I mean, it's the same crime, so to speak. In employment discrimination, generally we're dealing with an at-will situation where the employer could discharge for any reason other than one that violates discrimination law. Okay, if you put it, steelworkers get it in the collective bargaining agreement, that's a whole other issue. I would have no problem with the parties collectively bargaining that. But he blindsided the employer here. This employer was perfectly capable of citing specific standards of conduct. But he didn't know he had to, right? In the future, this employer will know that. In the future, you know, okay, we'll find a new thing he did wrong next time. Arbitrators are entitled to follow established arbitral principles, and if what he cited was this is what other arbitrators do, then it should be known to the employer that this is what arbitrators do because this is not the first time this employer has arbitrated a discharge case. But the problem is that's not the reasoning he based his in the Constitution. That's, I think, what Judge Logan is saying. It's not a Constitutional issue. Well, did you have anything else? The parties here agreed to leave certain procedural issues to the arbitrator, and that is very common. And if procedural issues related to arbitration are not specified in the contract, those are generally left up to the arbitrator. Okay. Okay. Thank you very much. Thank you. Do we have any more time? Your time has expired. I believe all the questions took my time, Your Honor. Well, I'll give you one minute. Okay. Thank you, Your Honor. I appreciate that very much. I would just point out three quick things. In the Sixth Circuit case that's referenced in my brief that I told you that I thought was persuasive authority, in that case, and I can give you the name if it's the International Brotherhood of Firemen and Oilers, Sixth Circuit, 1980. In that case, it was the same thing, and they found the facts to support insubordination, but they did not make a finding of insubordination, and they reduced the penalty. And the court said even though they didn't make a finding of insubordination, the facts they found were de facto insubordination. And that goes to the argument, Judge Raleigh, that you mentioned to opposing counsel. As to the due process, Judge Loken, I've mentioned throughout my brief, I've addressed the different things about that and the fact that she knew, the union steward participated in the investigation, the facts were laid out, she testified, she knew what the issue was, she knew the standards of conduct, et cetera. That's addressed in my brief. She was one of the officers of the union, so that's addressed there. And finally, I would make a point to Your Honor that the fact of how strong the arbitrator ruled like the due process and narrowed it, all of those factors go to show that he was intent on disregarding the language of the contract that said if you commit insubordination or facts that are insubordination as a matter of law, that you should be discharged. Thank you. How in your view did that due process ruling affect it? Well, we would argue two things in that regard. The first thing is insubordination is outlined in the contract, okay, as a dischargeable offense. What issue did he not consider because of his view of due process? He did not consider the other rules of conduct, the standards of conduct that we had outlined that included careless or poor workmanship, continued unsatisfactory performance of duties, violation of any safety rule, or providing false information to the company in any manner. Those rules are outlined in footnote 2 to my appellant's brief. He specifically disregarded those based on the argument of due process, but all of those are terminable offenses under the standards of conduct that were in place and referenced in the contract. Thank you. Thank you, Mr. Tim. Okay, we'll take it under advisement. We thank you for your arguments both in the brief and the oral arguments, and we'll be back to you in due course. Thank you.